All right. Our second case for this morning is actually a number of consolidated cases. The lead case is Chuluunbat against Experian Information Solutions and TransUnion. So we'll hear first from Mr. Brown. Thank you. I may please the court. The identity of a creditor, in other words, who owns the debt on the creditor's side, is a straightforward question of fact. If the purported creditor is an assignee from the original creditor, and all of the purported creditors in these consolidated cases claim to be assignees, all it takes to demonstrate ownership is an assignment agreement. And the only requirement for one to review an assignment agreement is the ability to read. And people never contest the validity of assignment agreements? But that's not the issue. The issue is the existence of the assignment agreement. Actually, if you look at Judge Kokoris's opinion in one of the cases, it certainly is part of the issue. But that was not the dispute that the consumers made. The consumers didn't say, oh, there is an assignment, but it's void or defective or legally invalid. Because they didn't get that far. Right. They said there was no assignment. So, yes, the question of the validity or enforceability of an assignment is a legal question. But the mere existence of an assignment is a simple question of fact. So, again, it's a simple task, obtaining a single document and reviewing its contents. And that's well within the capabilities of TransUnion, Experian, and Equifax. Companies are large. Mr. Brown, is it your position that the credit reports here shouldn't reflect these debts or that the debt should be on there but the ownership information is inaccurate? Yeah. Our contention is that there was no assignment and that the debts are held by the original creditors. And so there should not be collection agencies or debt buyers like Calvary or Midland or LVNB funding appearing on these credit reports, that that is factually inaccurate. You're not disputing that it's okay to have the debt itself on the credit report. Is that correct? That's correct. You just challenged the ownership information of it. Yeah. Essentially, somebody is reporting that, hey, this consumer owes me money. And our position is – If that's the case, what's your injury? Are you injured by just having the identity of the owners of the debt on your credit report? When they're collection agencies or debt buyers, yes. Because a debt that looks like a Citibank debt, an original creditor, is one thing. But it's pretty well established that the mere presence of collection agencies or debt collectors on a consumer's credit report materially injures their credit reputation. Mr. Brown, is it the appellant's position that whether or not legal requirements of an assignment are met is an issue that the credit reporting agencies can resolve? No. No. We're just talking about a simple, bare question of fact. Is there some documentation that evidences the existence of the assignment? We're not looking for the credit bureaus to explore, you know, plumb the depths of the legal validity of the assignment. And, again, these disputes are not saying, oh, they claim an assignment occurred, but we think that it was defective in some way. We're saying they claim an assignment occurred, but no assignment ever occurred, and there's no documentation of any kind that supports their claim that an assignment occurred. Where is the requirement for documentation? I mean, in most of these cases, when the complaint was first raised, the agency went back and said, did you have this debt assigned to you? And the company said, yes, it was assigned to us. So I take it your complaint isn't really that it wasn't verified. It was verified most of the time, but it wasn't verified with documentation behind it, which is where I wonder if we're starting down a slippery slope with the documentation requirements. That's sort of veering into what I consider to be a separate question, which is the reasonableness of the investigation that was undertaken. But the position of the appellees and the decisions by the district court don't speak to the reasonableness of the investigation. Their position in those decisions are that no investigation of any kind was required. Well, you would agree, would you not, Mr. Brown, that in this world of Fair Credit Reporting Act and all these other statutes, the role that each entity plays is actually very clearly defined. There are the agencies such as TransUnion. There are the original creditors, the original debtor. I mean, they all have a certain role. I'm just not sure where this documentation requirement that you're focusing on comes from. Well, the reason why I'm talking about documentation so much is because I think that highlights why this is a factual inaccuracy issue as opposed to a legal challenge. One can have documentation, though, that has legal ramifications or factual ramifications. How one reads a contract, how one reads an assignment, that can have both factual and legal aspects to it, correct? Yes, for sure. But, again, like the example that I highlighted in the briefing, if you show an ID to a bouncer that says that you're over 21 or under 21, the bouncer is not making a legal determination that requires a legal analysis or an adjudication. They're looking at a document and saying, oh, the year is such that you are over the age of 21 and you can come on in. It's a really simple, factual determination. So what do they do under your argument if documentation is provided? Let's say it's provided and not signed or provided and not clear. Is that sufficient? Well, I think that then we're getting into whether the investigation was reasonable or not. And I think the reason for this question is going to require a lot of discovery and we're going to have to understand the surrounding facts and circumstances to determine whether the investigation was reasonable or not. But we're still stuck at the threshold question in this case, which is do you have to do an investigation at all? That's why I'm focusing on the documents. I can think of all sorts of situations in which whether the underlying facts yield a certain answer really winds up being a legal question. Is there a principal-agent relationship between people? Is there an asinore-asinine relationship? Is there a buyer-seller relationship? As in the debt collection world, sometimes people just sell portfolios of debt for a certain amount of money. And, yes, there are facts that would feed into that legal determination, but whether the relationship is asinore-asinine or any of the others I mentioned is a legal determination. Well, so, again, the validity of the underlying documents is a legal determination, but their existence is the prima facie evidence. What's the point of having the documents if not to assist in the legal determination that you want TransUnion to make that, well, yes, these people are, in fact, valid assinees of the debt and, therefore, they can move ahead with collection efforts? You're sort of, unless you're making a purely formalistic argument, what's the point? Well, let's do an analogy and say that the consumer says, hey, this debt's not mine. You've got the wrong person, right? They're asking the credit bureaus to make a quote-unquote legal determination regarding their obligation on the underlying debt, and in order to do that, the credit bureau has to dig up paperwork, maybe a signed contract or charge slips, as the court in the Murphy case noted. But the credit bureaus admit in their briefing that that determination is an unequivocal fact issue. So when the shoe's on the other foot and the consumer says, hey, I don't owe them money, I don't know who this person is, I don't get why they're appearing on my credit report, that's also challenging a factual inaccuracy the same way as if you dig up- It is a factual inaccuracy. If there's a debtor, an alleged debtor named Joe R. Smith, a fairly common name, and they get some other Joe R. Smith's information, he can say, you've got the wrong guy. As a factual matter, I'm not the one who took out this debt. It has nothing to do with whether the debt is valid or invalid or is signed or not in signed. It's just a question of fact. Well, and the same is true for the ownership question. And this court has already made this determination in the Chemitol case. The existence of an assignment was held to be a pure question of fact. Well, there was a – I mean, at least your opponents suggest that there's a contextual element that we can't overlook here. Well, but the contextual element can't be who is the reviewer. The identity of the reviewer cannot be the context that determines whether something is a fact issue or a legal issue. The context is the facts and circumstances surrounding the particular issue here. And here, again, we're talking about an assignment. It will be evidenced by documentation. Does that documentation exist, yes or no? It's an extraordinarily simple factual inquiry. And for the credit bureaus to claim that it's beyond their competence simply doesn't hold water. But it's not simple if it's contested. And it's not simple if it's not clear-cut in the documents. Well, again, we're talking about three – So how are they competent to make those determinations? I'm talking about obtaining an assignment agreement, and you're looking at three data points, the identity of the creditor, the identity of the assignee, and an account number or some other unique identifier for the debt in question. If those three things line up, I think that you've conducted a reasonable investigation. But if you don't even bother to obtain the agreement, you say, I'm not going to do anything to look into this at all. That's obviously insufficient. But that's what the credit bureaus are claiming their responsibility is, is to do absolutely nothing. I see that I've got about five minutes left, and I'd like to reserve the rest of my time for rebuttal. Thank you. That would be fine. Thank you.  Good morning. May it please the Court? My name is Camille Nicodemus, and I'm here today representing Appley TransUnion in defending the seven district court decisions consolidated here, each of which dismissed appellant Fair Credit Reporting Act claims against all three consumer reporting agencies, Experian, Equifax, and TransUnion, which I will refer to as the CRA. The CRA has respectfully asked this Court to affirm the district court decision. Reversal of the district court decisions in these seven cases and the several additional cases that are now stayed pending the outcome of these seven would expand the CRA's requirements well beyond that inherent in the statute and in the case law interpreting it both here and in other jurisdictions. And it would render the CRAs into tribunals adjudicating the rights and responsibilities of consumers and creditors in the marketplace, a task that they neither can nor should be engaged in. So is it your position then? I mean, you know, Mr. Brown would like us to think, oh, you know, it's just like one piece of paper. You've got to dig out of your computer and forward it along to somebody. And if it were clear that that's all it was, even if people had some reason to criticize that piece of paper, what's the burden on the CRAs for that? Certainly. Appellants allege that it is a simple question of asking for a document they call an assignment agreement. But it's not the existence of this document that appellants are concerned with. It's the legal consequences of such a document, namely, whether the collection agencies have the legal right to collect these unpaid debts from appellants. And until a formal adjudication, to use the language that forth in the Denon case by this court, until a formal adjudication of those rights has been made by a court, no reasonable reinvestigation by the CRAs could have uncovered that issue. And we know there's a distinction between whether there's a factual inaccuracy alleged by the appellants and also whether a reasonable reinvestigation was conducted. There is some overlap in the theoretical analysis of those two things, because if a consumer reporting agency could not have uncovered something during that reinvestigation, as here, without going forth and acting like a tribunal, then in fact that's a legal question that they're not required to adjudicate. Let's take a look at appellants' attempted analogy from the these debts are mine cases to the these debts are not yours cases. The analogy does not work. In fact, the analogy points out very clearly the difference between a factual inaccuracy that the CRAs are required to investigate and a legal question. A consumer's ownership of a credit account could be determined by conducting an investigation to match up the social security number, the full name of the consumer, date of birth, address, and so on. Now, in some cases, that might require the CRA to look at a credit application or even a credit card statement, right? But once you go beyond that simple factual inquiry and it becomes an analysis of those documents, such as in the Brill case, where the court said the CRAs do not have to get a handwriting expert to examine those signatures, that goes beyond the factual analysis and turns it into a legal determination of that instrument. Or, similarly, in the Shiel Bags case out of Wisconsin, where the court held that the CRAs were not required to determine ownership on the consumer side because it involved a divorce decree. So how are ordinary consumers supposed to know the difference between a legal and a factual question since people go to law school for three years and here we all are, you know, many years later in a courtroom talking about that? Because, you know, under DENAN, if it's a legal matter, then you need to go to a proper tribunal, probably a court, and resolve whatever, you know, the ownership question is or whatever the legal issue might be, perhaps the availability of an affirmative defense. But can ordinary people really do this and does the Fair Credit Reporting Act put the burden on them at the risk of not being able to contest, let's say, the legitimacy of an assignment? Excellent question, Your Honor. The Fair Credit Reporting Act sets out a procedure whereby the consumer contacts the credit reporting agencies with whatever the nature of their dispute may be. It may include some factual issues. It may include some legal issues. And in this case, the CRAs did contact the collection agencies to determine the factual aspect that they could confirm. Name, social security number, amount due, when the account went into collections, and so on. The legal aspect of it, they did not. The result of that investigation was a communication from each CRA to the consumers in writing, explaining what they did, who they contacted, what was verified, and follow-up steps that those consumers could take. It might include submitting additional information to the CRAs, contacting the collection agencies or creditors directly, and so on. As this court has held and all of the district court opinions that are on appeal here, the avenue for these consumers to adjudicate the legal aspect of their dispute is simply in a lawsuit between them and the collection agency. Once the court has adjudicated that and made a determination what those rights and responsibilities are back and forth, then if the credit reporting agencies continue to report that in light of a dispute that comes to them from the consumer, then maybe there is an FCRA claim. But not until, and it's for the simple reason that the CRA could not have uncovered that fact in the absence of that legal adjudication because that determination hasn't been made. We talked a little bit about the assignment agreement. It's interesting to me that in the Denim case, one of the issues was whether these collection agencies could operate in a certain state, whether they were charging new serious interest rate, whether they were allowed to operate outside of the Indian reservation. Similarly here, if a credit reporting agency were to look at the document, is the signature on there? Is it valid? Was it dated? Is there an element on that agreement that requires consideration? Was it paid? Was the agreement revoked? Was there something in there that allowed it to be dispensed with? You know, one party could go to the court and have it revoked. So all of those questions are legal questions that a consumer reporting agency simply cannot and should not be in the business of doing. I think that decisions from DeAndre all the way down to Denim are that the courts don't want credit reporting agencies making these determinations. And consumers should not want that either. Consumers did want a court of law to apply those rules, to take a look at the applicable state law, to take a look at whether those things were met, and make that determination once and for all, rather than have TransUnion or Equifax or Experian trying to look at those documents and do that. And I think it's interesting, the dichotomy between the factual and the legal, because in some of those cases where there was a fact dispute, the court still said that the CRAs do not have to go beyond a certain point. If they can verify ownership on the consumer side with those indicators, great. If they have to go beyond that and start pulling paperwork and making an analysis that requires them to bring in experts or legal experts, that's different. They don't have to do that. We talked about chemotol. We talked about this distinction between these debts are not mine versus these debts are not yours and how that analogy fails. I also wanted to touch on appellant's claim that because the CRAs did conduct an investigation, we now cannot claim that we were not required to do so. And in fact, we did an investigation, contacted the collection agencies, and it might well have been that the collection agencies came back and said, okay, delete the account. It also might well have been that 30 days passed, which is the statutory time period for them to respond. And in those instances, the CRA deletes the account if they get no response, because that constitutes a failure to verify the account, and it would have been deleted. So those things could have happened. It was also very helpful for the CRAs to verify the factual aspects of the account, date, amount, name, so on, and report back to the consumer that happened. So that is part of the investigation process that's outlined by the CRA and outlined in the cases. And it's very odd that appellants would blame us for having gone through with that process and claim that it prevents us from taking the position that we were not required to investigate the legal aspect of the dispute. All right. Thank you very much, Ms. Nicodemus. Mr. Hall. Good morning, Your Honors. May it please the Court, my name is Christopher Hall, and I represent Experian Information Solutions in these consolidated appeals. I'll refer to them as my colleague. Is Experian still in this case in a live way? Can you explain? We are still in the Chulibat appeal and are in, anticipating you would ask this, the Rodas appeal, I believe, too. We've settled a few of the cases. Okay, so you didn't settle all of them. We did not settle all of them. I wondered if that had been wrapped up. But if you still have live disputes in some, that's fine. We do, Your Honor. So I wanted to start where Judge Woodbury started this morning at the well-recognized fact that the consumer reporting agencies and data furnishers, like the debt buyers in this case, play very different roles in the credit reporting industry. That was one of the animating principles that motivated the Court's decision in the Denton case, talking about the sort of allocation of risk and the assumption of risk that creditors, when they report debts, or in this case debt buyers, take on when they, you know, agreed to take on a body of debt and report them to the credit bureaus. It's well recognized that the credit reporting agencies are third parties to the information that they obtain and report, and accordingly their role in resolving disputes is more limited. As the Gorman case in the Ninth Circuit recognized, generally their role is to simply notify the furnishers so the furnishers can conduct their own reinvestigation. In this case, I think the allegations, you know, bear that out and make a lot of sense in that context, that here Calvary or Midland, the debt buyers at issue, took on assignments of debts, reported them, and in some cases sued the consumers in state court to enforce the debts, and clearly, you know, have taken on the responsibility and the risk associated with determining whether or not those debts are valid and collectible. Congress in 1996 amended the FCRA to specifically add some liability for data furnishers. The First Circuit characterized those amendments as closing a liability gap in the Chang case. The issue here really in appellant's briefs sort of suggested they would have no recourse, but when you look at the allegations, I mean, they're charging these debt buyers with outright fraud, and they do have recourse, both in a, you know, common law fraud action or even under the FCRA after the CRAs have contacted the data furnishers and asked them to investigate and they've responded back verifying that the debt is reportable, that the reporting is accurate. There's liability for those furnishers under 1681S2. So the notion that the consumers have no recourse simply isn't borne out by the structure of the Fair Credit Reporting Act and isn't borne out by the other decisions that motivated the Denham decision and that are in line with it. I also wanted to point out that appellant's reliance on Chemtol, I think as we point out in our briefs, there is a context there, and that context actually is telling in this instance. In Chemtol, the court held that the intention in an assignment under Illinois law could be a question of fact for the fact finder. Of course, the Fair Credit Reporting Act doesn't require, let alone empower, the consumer reporting agencies to impanel juries or many arbitrations to find fact on whether an assignment was valid, whether it was properly memorialized, whether the underlying contract requires the assignment to be memorialized in the first place. There's a host of questions that in a court of law we might call questions of fact for a fact finder, but that are not, as Judge Feinerman's analysis in the Soyinka opinion I think carefully explained, are not fact questions in the sense that term is usually used in credit reporting cases. And lastly, Your Honor, I wanted to just point out a few things about the Murphy decision that appellants rely on here. Generally, that opinion was issued before the DeAndrade, Brill, and Denin line of decisions sort of brought up this notion of who was responsible for determining legal liability. It was decided before the 1996 amendments were enacted. It would sort of more clearly define and delineate what Congress expected of the various entities in the credit reporting industry. And, you know, ultimately when that case went to trial, the jury did fine for experience. So the decision there, I think, is not really on all fours here. With that, I'm happy to cede the rest of my time or answer any questions the court might have. All right. Thank you very much. Ms. Brennan. Good morning, Judge Wood, Judge St. Eve, and Judge Brennan. I'm here on behalf of Appellee Aquifax Information Services, LLC, and I feel that co-defense counsel, Ms. Nicodemus and Mr. Hall, have covered the issues, and I relinquish the rest of my time. All right. Thank you very much, Ms. Brennan. Anything further, Mr. Brown? Yes, thank you, Your Honor. I think, as I mentioned before, I think it's important to kind of just zoom out and put ourselves in the shoes of a consumer who's looking at their credit report, and they see an unfamiliar debt collection company who they've never done business with, and they believe that this information is not correct. They reach out to the credit bureaus and say, hey, I don't owe this person any money. This is not the person that I owe. I do not have a debt with this person. The decisions in the district court and the position of the CRAs today is that the CRAs do not have to conduct any investigation. Now, they've argued that they did conduct an investigation, and they've made a bunch of arguments about what the extent of that investigation must be in order to be considered reasonable under the Fair Credit Reporting Act, but that's not the issue before the court today. The issue before the court is whether that claim by the consumer even triggers an obligation of any kind by the credit reporting agencies to conduct an investigation. And I think the answer, obviously, is that that is a factual inaccuracy that the consumer is claiming, and the CRAs are required to conduct an investigation regarding that factual inaccuracy. So can I ask you a question, Mr. Brown? This is a little bit sideways, but why didn't you give any attention to our Danone case in your briefs? Oh, I did in the reply brief. Yeah, the opening brief might have been a good place. Well, I don't think Danone is applicable here because that involved a legal challenge to the enforceability or validity of the underlying debt. Can you say that given that several of the district courts relied on it too? Well, because I think the district court's reasoning was fundamentally misguided. But that's what you put in your brief. I mean, you are asking us to review the district courts. The district courts felt that there was guidance from Danone to be had. Obviously, no two cases are identical. And you left us pretty much at sea about why you don't agree with that. Well, I mean, I think I spent most of the brief explaining that this is not a legal challenge to the validity or enforceability of the debt but is instead a challenge to the factual inaccuracy of the claimed owner of the debt. And so I don't think Danone is on all fours with respect to the arguments in this case because, again, the CRAs have quite effectively at the district court level convinced the court that this is about a legal challenge, about the validity or enforceability of the underlying debt or the claimed assignment. And I think it's important to reframe the question as the existence of the assignment. And, again, that goes back to the consumer looking at their credit report. They see an unfamiliar entity and say, I don't owe this person any money. Can you please clear this up and make it factually accurate? Mr. Brown, I know these lawsuits are around the country. Has any court come out in agreement with you? Not that I'm aware of. I think this is a novel issue as far as my research is concerned, except as it relates to the consumer side of the ownership question. That is pretty well settled, notwithstanding Appellee's arguments to the contrary today. They admitted in their briefing that the consumer side ownership issue is an unequivocal issue of fact that does require an investigation. And the argument that that analogy doesn't hold is perplexing because it's the mirror image. You're saying, hey, this debt is not mine, and in order to conduct an investigation, they dig up some paperwork and they talk to the credit bureau and they see if everything lines up or the data furnisher and see if everything lines up. And it's the same here. But they don't have to provide all of that dossier to the consumer. If somebody says, I don't recognize this name, and the credit reporting agency contacts the information furnisher, the data furnisher, and they say, oh, yeah, we are now in charge of this debt. We have it. Then they've figured out that it's legitimate. They say, no, this is your debt. We have it by assignment. Yeah, if an investigation is conducted. But the district courts and the credit bureaus today say that they do not have to conduct an investigation. Again, the reasonableness of the investigation that is conducted is a separate question. The question is, do they have an obligation to conduct any investigation of any kind? The district courts and the credit bureaus say no. And I'm here because I think that that's the wrong answer. I think, yes, they must conduct at least some investigation. And the reasonableness of that investigation will depend on the facts and circumstances of the case. You know, here in the disputes, the consumer said, hey, these people are not trustworthy. They routinely break federal law. And the established case law in this circuit is that if the consumer alerts the credit bureau to the fact that the furnisher is untrustworthy, then simply relying on the furnisher's word is insufficient. But, again, we have the threshold question of whether any investigation is required. I see that my time has expired. Thank you very much. Thanks to all counsel. We will take the case under advisement.